J-S26036-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NANCY LOUISE ROBINSON | : | |
| | : | |
| Appellant | : | No. 1569 MDA 2025 |

Appeal from the Judgment of Sentence Entered October 14, 2025
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0004223-2024

BEFORE:  PANELLA, P.J.E., NICHOLS, J., and NEUMAN, J.

MEMORANDUM BY NEUMAN, J.:          **FILED: AUGUST 4, 2026**

Appellant, Nancy Louise Robinson, appeals from the judgment of sentence of 60 days probation and $50 in restitution, imposed after a jury found her guilty of one count of theft by unlawful taking, 18 Pa.C.S. § 3921(a). Herein, Appellant challenges the trial court's refusal to permit evidence of the victim's prior convictions for drug offenses.  We affirm.

Appellant's conviction stems from evidence that she stole Joshua Zink's wallet, which he accidentally left at the checkout counter of a store called Roses.  At trial, Zink testified that on Sunday, June 23, 2024, he and his mother stopped at Roses to pick up a few items.  N.T. Trial, 8/12/25-8/13/25, at 115-16.  After paying at the checkout counter, Zink inadvertently left his wallet sitting by "the card reader."  *Id.* at 117.  As Zink and his mother loaded their car outside the store, he realized his wallet was missing.  *Id.* at 118. After being unable to locate his wallet in the car or back inside the store, Zink

asked the staff of Roses to see the store's surveillance footage. *Id.* That footage showed an individual taking Zink's wallet from the checkout counter. *Id.* Zink then called the police to report the theft, and when he walked outside to make the call, he noticed his wallet lying "on the ground near [a] trash can." *Id.* at 119. Zink testified $650 to $700 in cash was missing from his wallet, *id.* at 120, but his credit cards, bank cards, and ID were still in it, *id.* at 127.

Officer Scott George of the York County Regional Police Department testified he responded to Roses for a reported theft on June 23, 2024. *Id.* at 131-32, 133-34. At the store, he reviewed the surveillance footage of Zink going through the checkout. *Id.* at 138. The video footage was entered into evidence and played for the jury during Officer George's testimony. *Id.* As the video played, Officer George narrated, explaining that it showed Zink and his mother paying for their items, *id.* at 139-40, and Zink's placing his wallet on the counter. *Id.* at 141. After Zink left "his wallet on the register counter, next to the credit card machine[,]" *id.*, the video showed a group of customers behind Zink, which included Appellant, moving to the counter to pay for their items. *Id.* at 142. As a man with Appellant's group, later identified as her fiancé, Michael Smith, paid for their items, Appellant "completely covered the wallet with her hand, waited approximately [five] seconds[,] … picked the wallet up[,] and hid it under her left armpit." *Id.* at 141, 143-44. Appellant then walked out of the store. *Id.* at 145.

Ultimately, Officer George was able to identify Appellant from photographs taken from the video and anonymous tips. *Id.* The officer contacted Appellant, who confirmed she was at the store with her fiancé, Smith, and two other women. *Id.* at 148. Appellant told Officer George "she picked the wallet up off the register counter" because "she believed that the wallet was her fiancé's." *Id.* However, Appellant could not "explain why she didn't say anything to [Smith], [or] why she hid the wallet under her arm and … immediately walked out of the store." *Id.* at 148-49. According to Officer George's testimony, Appellant also told the officer that,

> when she got out of [the] store[,] she opened the wallet and realized … the wallet was not, in fact, her fiancé's, it was somebody else's. Despite now realizing … it was not … Smith's wallet and [it was] somebody else's, she went through the wallet looking for whatever else.
>
> She took the wallet, [and] when she was done looking through it, [she] sat it on a chair between Roses and the next business, which would be -- it's called the Compound, it's an athletic facility for high school kids. There are chairs set up that used to be next to a pay phone where staff from Giant, when Giant was there, used to sit and where staff from Roses [would] come[] out and take[] their break, whether to take a drink or [have] a smoke. They [would] go out and sit there.
>
> Somewhere … outside of Roses, she sat the wallet on a chair and walked away from it. A short time later[, she] went back and retrieved the wallet again and took it back to [Smith's] truck with her. At which point[, Appellant] went through the wallet, again, [and] found what … defense counsel is alleging were drugs…, and, again, without returning it to anybody, … simply threw it out the window and … left.

*Id.* at 149-50. Officer George noted there were no drugs or money in the wallet when he examined it at the scene. *Id.* at 150-51.

- 3 -

Smith testified on Appellant's behalf at trial. He claimed it would not be unusual for Appellant to pick up his wallet, as he is "very forgetful and … leave[s] things at places here and there." *Id.* at 168. Smith explained that on the day of the incident, he paid for their items at Roses and walked outside, where he saw Appellant "was smoking a cigarette and talking on the phone … at a bench nearby…." *Id.* When they got into Smith's truck, Appellant showed him the wallet, indicating she thought it was his. *Id.* at 169. When Smith told her it was not his wallet, she opened it to see whose it was, at which point they found "dollar bills … wrapped with a pink substance[,]" which they believed to be drugs. *Id.* at 169-70. Smith said he wanted the drugs "out of [his] truck immediately[,]" so they threw the wallet containing the drugs out the window of the truck and left the scene. *Id.* at 170-71. Smith testified that, aside from the dollar bills containing drugs, there was no other money in the wallet, and to his knowledge, Appellant did not take anything from it. *Id.* at 172.

Based on this evidence, the jury convicted Appellant of theft by unlawful taking of property less than $50, which "constitutes a misdemeanor of the third degree." 18 Pa.C.S. § 3903(b)(2). On October 14, 2025, the trial court sentenced her to the term of probation and restitution set forth above. She filed a timely notice of appeal, and she and the court complied with Pa.R.A.P. 1925. Herein, Appellant states one issue for our review:

> [I.] The trial court abused its discretion when it denied Appellant's motion *in limine* seeking to admit the victim's prior drug conviction involving possession of pink powder, which was relevant under

- 4 -

Pa.R.E. 403[] to corroborate the mistake-of-fact defense that Appellant did not intend to deprive the victim of his wallet, but disposed of it when she saw pink powder inside.

Appellant's Brief at 4 (cleaned up).

Initially, we recognize:

The standard of review employed when faced with a challenge to the trial court's decision as to whether or not to admit evidence is well settled. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Young*, 989 A.2d 920, 924 (Pa. Super. 2010) (cleaned up).

Before addressing Appellant's argument, we reproduce, in pertinent part, the trial court's summary of its ruling on Appellant's motion *in limine*:

[Appellant's] motion *in limine* sought to introduce evidence of the victim's prior criminal history, including a prior drug conviction involving a "pink powder," … in support of [Appellant's] claimed mistake-of-fact defense to the theft charge. Defense counsel argued … [Appellant] initially removed the wallet believing it belonged to her fiancé and later disposed of it only after discovering what she believed to be drugs inside, thereby negating any intent to permanently deprive the victim of his property.

The Commonwealth objected, arguing … the victim's prior criminal history was irrelevant to [Appellant's] intent at the time of the taking, constituted impermissible propensity evidence, and that any probative value was substantially outweighed by the danger of unfair prejudice and jury confusion.

\*\*\*

- 5 -

> The trial court engaged in an extensive colloquy with counsel regarding the relevance and admissibility of the proposed evidence, repeatedly questioning the logical connection between the victim's prior criminal conduct and [Appellant's] intent at the time she removed the wallet. The court expressed concern that admission of the proposed evidence would improperly place the victim on trial and noted that [Appellant] did not attempt to return the wallet to store personnel or law enforcement after discovering its contents.
>
> ***
>
> The court thereafter denied [Appellant's] motion *in limine*, ruling that evidence of the victim's prior drug conviction … was inadmissible under the Pennsylvania Rules of Evidence. Trial then proceeded before a jury.

Trial Court Opinion (TCO), 1/23/26, at 2-3.

Appellant now insists the court erred by precluding evidence that Zink had a prior conviction for possession of drugs in the form of a pink powder. Appellant maintains "[t]his evidence corroborated [her] statements to police and her trial testimony that she mistakenly picked Zink's wallet up … believing it to be her fiancé's[,]" and she discarded the wallet after finding a pink powder believed to be drugs inside. Appellant's Brief at 15. She contends the evidence of Zink's prior drug crime would not have been prejudicial, as "[p]rejudice is not a factor when a defendant seeks to admit third person guilt evidence … because that person is not facing the possibility of a criminal conviction…." *Id.* at 18 (quoting *Commonwealth v. Yale*, 249 A.3d 1001, 1020 (Pa. 2021)). Appellant further insists the admissibility of Zink's prior bad act should have been assessed under "the more relaxed relevancy standard pursuant to Pa.R.E. 401 through 403," rather than as prior-bad-acts evidence under Rule 404(b). *Id.* at 19 (relying on *Yale*, 249 A.3d at 1004

("[E]vidence of a third person's guilt offered by a defendant is admissible if it is relevant pursuant to Pa.R.E. 401 and not otherwise excludable pursuant to Pa.R.E. 403.") (footnotes omitted)).[1]

Appellant argues that under Rules 401 and 403, as well as our Supreme Court's decision in **Commonwealth v. Eubanks**, 512 A.2d 619 (Pa. 1986), the evidence of Zink's prior conviction was relevant, and its probative value was not outweighed by any prejudicial impact. She explains:

> In **Eubanks**, the defendant was accused by the complaining witness of forcing her into his apartment, overpowering her, and raping her. A man visiting a house next-door testified that he overheard shouting and cries for help, then alerted police. The man and the police officer both entered the apartment and found Eubanks naked and the complaining witness crying hysterically and bruised, with a swollen face. **Eubanks**, [512 A.2d] at 620.
>
> Eubanks claimed … he had consensual sex with the complaining witness earlier that night, that she had made comments about having difficulty becoming aroused because she had shot someone in the head, and that she had asked Eubanks to return to his apartment and wait there naked. Eubanks claims … he complied, and when the complaining witness later arrived, she threw a pair of her panties on the floor and began to scream "Rape. Help. Rape." Eubanks acknowledged they then had a scuffle as he tried to quiet her, which continued for about ten minutes until police arrived. **Id.** at 620-[]21. Eubanks sought to introduce the complaining witness's prior conviction of third-degree murder, under the theory that the conviction "[t]ends to corroborate his

---

[1] Rule 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. Additionally, under Rule 403, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

claim that [the complaining witness] told him she had killed someone by shooting them in the head." *Id.* at 623.

The *Eubanks* [C]ourt determined … it was error to preclude the conviction from introduction, even though the underlying facts of the conviction were obviously unrelated to the charges against the defendant, and that it must be introduced on retrial. The [C]ourt acknowledged that the evidence may smear the complaining witness in the eyes of the jury, and that a jury may determine … the probative value of the evidence was minimal, but that the fundamental right of a criminal defendant to present a defense required the introduction of the evidence which could support the defendant's version of events. *Id.* at 623-[]24.

Appellant's Brief at 21-22.

Appellant maintains "[t]he holdings of *Yale* and *Eubanks* may be distilled to the general proposition that … criminal conduct or bad act evidence of third parties or the victim must be admitted if offered by a criminal defendant and that evidence meets the minimal standard of relevance." *Id.* at 23. *See also Yale*, 249 A.3d at 1021-22 (finding evidence of another "person's crimes, wrongs[,] or other acts lies outside the contours of Rule 404(b) when introduced by a criminal defendant[,]" and "determining the admissibility of third person guilt evidence requires nothing more than the traditional inquiries prompted by our rules of evidence"); *id.* at 1023 ("Third person guilt evidence is admissible if it is relevant, not otherwise excludable, and surmounts the disqualifying considerations of Pa.R.E. 403."). She contends that, here, as in *Eubanks*, the evidence of Zink's prior drug offenses was relevant to corroborating her defense that she took the wallet inadvertently, and thereafter discarded it upon finding drugs inside. She explains:

There is no realistic way for [Appellant] to have known about Zink's history with possessing drugs, in what type, and in what form. This evidence corroborated [Appellant's] version that she picked up the wallet mistakenly, and only disposed of it, rather than trying to find the owner, because she saw the pink powder wrapped in dollar bills in it and didn't want to be caught in possession of drugs. Thus, the evidence [Appellant] sought to introduce here met the minimal relevancy standard of Rule 401-403 consistent with **Yale/Eubanks**.

Appellant's Brief at 23-24.

After carefully reviewing the record and case law discussed by Appellant, we conclude she is not entitled to relief. The trial court first found the evidence of Zink's prior convictions had minimal probative value. The court reasoned that "the existence of a prior drug conviction did not establish that [Zink] possessed drugs in his wallet at the time of the offense, nor did it bear directly on [Appellant's] intent at the moment she removed the wallet." TCO at 4. The court also "considered and distinguished … **Eubanks**," noting that case "involved evidence directly relevant to the defendant's state of mind under the specific facts of that case, whereas here, the proffered evidence concerned unrelated prior conduct of the victim and required the jury to infer present drug possession based solely on past behavior." **Id.** at 4-5. Second, the court concluded "any minimal probative value of [Zink's] prior drug conviction was substantially outweighed by the danger of unfair prejudice and confusion of the issues." **Id.** at 5. Therefore, the court determined the evidence should be precluded.

We discern no abuse of discretion in the court's decision. At best, Zink's prior conviction was relevant to proving the truth of Appellant's claim she

found pink-powder drugs in his wallet and then discarded it. However, that fact had no direct bearing on any element of Appellant's theft offense under 18 Pa.C.S. § 3921(a), which states: "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." Clearly, Appellant's discovery of drugs in Zink's wallet **after** she took it had no relevancy to her **intent** in taking the wallet in the first place.

Moreover, even if the at-issue evidence was relevant and admissible under the rationale of **Eubanks** to lend credibility to Appellant's claim she took the wallet mistakenly, any error in the court's excluding it was harmless. "[A]n evidentiary error of the trial court will be deemed harmless on appeal where the appellate court is convinced, beyond a reasonable doubt, that the error could not have contributed to the verdict." **Commonwealth v. Vance**, 316 A.3d 183, 192 (Pa. Super. 2024) (citation omitted).[2] We have explained:

> [A]n error will be deemed harmless where the appellate court is convinced beyond a reasonable doubt that the error could not have contributed to the verdict. Guidelines for determining whether an error is harmless include: (1) whether the error was prejudicial to the defendant or if prejudicial, whether the prejudice was *de minimis*; (2) whether the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) whether the evidence of guilt was so overwhelming as established

---

[2] Although neither the Commonwealth nor the trial court discuss harmless error, "*sua sponte* invocation of the … doctrine is not inappropriate as it does nothing more than affirm a valid judgment of sentence on an alternative basis." **Commonwealth v. Hamlett**, 234 A.3d 486, 492 (Pa. 2020) (citation omitted).

by properly admitted and uncontradicted evidence that the prejudicial effect of the error was so insignificant by comparison to the verdict.

*Commonwealth v. Adams*, 39 A.3d 310, 322 (Pa. Super. 2012) (cleaned up).

Here, Appellant insists the purported error of precluding Zink's prior conviction was not harmless, as that evidence supported the credibility of her defense she took Zink's wallet inadvertently and without the intent to commit theft. *See* Appellant's Brief at 24. However, for the reasons set forth above, that evidence was only minimally probative of Appellant's intent in taking the wallet and, thus, any prejudice she suffered from its preclusion was *de minimis*.

Additionally, there was overwhelming evidence proving Appellant did *not* mistakenly take the wallet, and that she instead intended to steal it. Namely, the surveillance video showed Appellant cover the wallet with her hand before picking it up and hiding it under her armpit. She then immediately left the store with the wallet, rather than handing it to Smith, who she allegedly believed owned it. Appellant could not explain to Officer George why she hid the wallet under her arm before leaving the store, or why she did not say anything to Smith. She also told the officer that she realized the wallet was not Smith's when she opened it outside the store, yet she did not take the wallet back inside the store or notify anyone she had found it. Instead, she told Officer George that she placed the wallet on a chair outside the store and walked away. A short time later, she took the wallet for a second time

and entered Smith's truck with it, at which point she went through the wallet again — despite knowing it was not Smith's —and allegedly found the drugs.

This evidence was strong proof that Appellant took the wallet knowing it did not belong to Smith and with the intent of depriving the owner of it. Thus, even if the evidence of Zink's prior convictions would have been minimally probative to the credibility of her claim she took the wallet accidentally, we are convinced, beyond a reasonable doubt, that such evidence would not have changed the jury's verdict. Accordingly, any error in precluding it was harmless.

Judgment of sentence affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 08/04/2026